1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALIEU JATTA,

                        Petitioner,

        v.

LOWELL CLARK, et al.,

                        Respondents.

Case No. C19-2086-BJR-MAT

REPORT AND RECOMMENDATION

## I.      INTRODUCTION

Petitioner, a native and citizen of the Republic of the Gambia, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington. Through counsel, he filed this 28 U.S.C. § 2241 habeas action to obtain a stay of removal and release from detention. (*See* Dkt. 1.) Currently before the Court is the Government's motion to dismiss for lack of jurisdiction (Dkt. 6) and Petitioner's emergency motion for a stay of removal and release from detention (Dkt. 8). The Court temporarily stayed his removal pending additional briefing and consideration of the pending motions. (Dkt. 12.) Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss for lack of jurisdiction be GRANTED in

1  part and DENIED in part, and Petitioner's motion for a stay of removal and release be GRANTED

2  as to the stay of removal and DENIED as to the request for release.

3                          II.        <u>BACKGROUND</u>

4          Petitioner was admitted to the United States as a nonimmigrant student on February 23,

5  2003. (Dkt. 11 at ¶ 3.) On March 2, 2006, and June 11, 2006, he was arrested on charges of

6  harassment/threats to kill, malicious mischief-domestic violence, assault in the fourth degree-

7  domestic violence, and violation of a protection order. (*See* Dkts. 14-7, 14-8.) On August 23, 2006,

8  he was placed in removal proceedings on the non-detained docket and charged with removability

9  for failure to maintain his status as a student pursuant to 8 U.S.C. § 1227(a)(1)(C). (Dkt. 11 at ¶ 4;

10  Dkt. 14-11.) On October 6, 2006, he was convicted after a jury trial of malicious mischief in the

11  second degree-domestic violence and felony violation of a no contact order-domestic violence.

12  (Dkt. 11 at ¶ 5; Dkt. 14-7 at 10-11.) He was sentenced to 90 days and 14 months respectively.

13  (Dkt. 11 at ¶ 5; Dkt. 14-8 at 20-24.)

14          On February 27, 2007, ICE took Petitioner into custody upon his release from prison. (Dkt.

15  11 at ¶ 6.) On July 26, 2007, an Immigration Judge ("IJ") denied Petitioner's applications for relief

16  from removal, finding that he was not credible and that his convictions constituted particularly

17  serious crimes. (*Id.* at ¶ 7.) The IJ ordered Petitioner removed to the Republic of the Gambia. (*Id.*;

18  Dkt. 14-9.) Petitioner did not appeal to the Board of Immigration Appeals ("BIA"), and his removal

19  order became administratively final 30 days later. (Dkt. 11 at ¶ 7; Dkt. 14-10.)

20          At the time Petitioner was ordered removed, the Republic of the Gambia was deemed a

21  recalcitrant country, meaning it was routinely uncooperative in issuing travel documents so that

22  its citizens could be repatriated from the United States. (Dkt. 11 at ¶ 8.) ICE was unable to obtain

23  a travel document for Petitioner during the 90-day removal period and ultimately concluded that

1   removal was not reasonably foreseeable. (*Id.* at ¶¶ 9-10.) Accordingly, on November 27, 2007,

2   ICE released Petitioner on an Order of Supervision ("OSUP") with employment authorization.

3   (*Id.*; Dkt. 1 at ¶ 2; *see also* Dkt. 8-1 at 6.) Under the terms of the OSUP, Petitioner was required to

4   periodically check in with ICE and to cooperate with ICE in obtaining a travel document to effect

5   his removal from the United States. (Dkt. 11 at ¶¶ 10, 12-13; Dkt. 16-2 at ¶ 1.) Petitioner fully

6   complied with these requirements but was unsuccessful in obtaining a travel document or passport.

7   (Dkt. 16-2 at ¶ 1.)

8       In October 2016, the United States imposed visa sanctions on the Republic of the Gambia,

9   which resulted in slowly increasing cooperation in issuing travel documents. (Dkt. 11 at ¶ 14.) On

10  January 3, 2018, ICE instructed Petitioner to complete and submit a travel document application

11  to the Gambian Embassy, which he did without success. (*Id.* at ¶ 16; Dkt. 16-2 at ¶ 1.)

12      In March 2018, Petitioner married his current wife, a U.S. citizen. (Dkt. 8-1 at 2.) They

13  have two young U.S. citizen children together, and Petitioner has one permanent resident child

14  from a previous relationship. (Dkt. 1 at ¶¶ 2, 7; Dkt. 8-1 at 3-4.) In June 2018, Petitioner's wife

15  filed a Form I-130 Petition for Alien Relative, the first step necessary to apply for permanent

16  resident status. (Dkt. 8-1 at 15; Dkt. 1 at ¶ 5.)

17      On October 16, 2018, Petitioner filed a motion to reopen with the Immigration Court to

18  allow him an opportunity to apply for cancellation of removal.[1] (Dkt. 14-3 at 4.) On November

19  13, 2018, the IJ denied the motion to reopen, finding that the motion was time-barred but that

20  regardless Petitioner was ineligible for cancellation of removal based on his criminal convictions

21

22  _____

23  [1] ICE Deportation Officer Neil Schaefer attests that he has reviewed Petitioner's immigration records and that this motion to reopen also asked the IJ to exercise *sua sponte* authority to reopen his case so he could adjust his status through his wife. (Dkt. 11 at ¶ 17.) Petitioner's counsel states in a brief that this motion to reopen only involved cancellation of removal. (Dkt. 16 at 8.) Whether Petitioner raised adjustment of status in his first motion to reopen does not affect the Court's recommendation regarding the pending motions.

REPORT AND RECOMMENDATION - 3

and was not entitled to *sua sponte* reopening. (Dkt. 14-3 at 8.) Petitioner did not appeal this decision. (Dkt. 11 at ¶ 18.)

In August 2019, Petitioner was terminated from his employment as a sanitation worker. (Dkt. 1 at ¶ 3.) With the support of his union, he filed a grievance against his former employer alleging unlawful termination based on racial discrimination. (*Id.*) An arbitration was scheduled for March 2, 2020. (*Id.*)

On October 15, 2019, U.S. Citizenship and Immigration Services ("USCIS") issued a notice approving the I-130 petition. (Dkt. 8-1 at 5.)

On October 16, 2019, the Republic of the Gambia issued a temporary travel document for Petitioner, valid until April 10, 2020, in response to a request by ICE. (Dkt. 11 at ¶¶ 19-20; Dkt. 14-2.) On October 24, 2019, ICE instructed Petitioner to check in on December 4, 2019. (Dkt. 11 at ¶ 21; Dkt. 16-2 at ¶ 2.)

On December 4, 2019, Petitioner appeared around noon at the ICE office in Tukwila, Washington, accompanied by his wife and 16-month old child. (Dkt. 11 at ¶ 22; Dkt. 16-2 at ¶ 2.) While Petitioner was waiting for the ICE officer to meet with him, he received a telephone call from his teenage daughter saying that she had been in a car accident. (Dkt. 16-2 at ¶ 2.) Petitioner decided to pick her up and then return to the ICE office. (*Id.*) He left his wife and child at the office since there was time for him to return to the office before it closed. (*Id.*; *see also* Dkt. 11 at ¶ 22.) Shortly after he left, his wife called him and reported that an ICE officer had told her Petitioner could return the next day. (Dkt. 16-2 at ¶ 2.) Petitioner then drove back to the office to pick up his family before going to get his daughter. (*Id.* at ¶¶ 2-3.) When he pulled up in front of the office, his wife and child got in the car with him and they left. (*Id.* at ¶ 2; *see also* Dkt. 11 at ¶ 22.)

After they had driven several blocks, ICE officers stopped their car and arrested Petitioner. (Dkt. 16-2 at ¶ 2; Dkt. 11 at ¶ 22.) Once they were back at the office, the ICE officer who had spoken with Petitioner's wife confirmed that he had told her Petitioner could return the next day but explained that ICE headquarters had instructed him to detain Petitioner. (Dkt. 16-2 at ¶ 3.) ICE served Petitioner with a Notice of Revocation of Release, which informed him that a travel document had been issued, and provided him with an informal interview as required by 8 C.F.R. § 241.13. (Dkt. 11 at ¶ 23; Dkts. 14-5, 14-6.) ICE then scheduled Petitioner's removal for January 14, 2020. (Dkt. 11 at ¶ 24.)

At some point prior to his December 4, 2019 arrest, Petitioner filed with USCIS a Form I-601 Application for Waiver of Grounds of Inadmissibility and a Form I-212 Application to Reapply for Admission. (Dkt. 1 at ¶ 5; Dkt. 14-6 at 2.) There is no evidence in the record that those applications have been adjudicated. (*See* Dkt. 1 at ¶ 5.)

After his arrest, Petitioner filed a Form I-246 Application for Stay of Deportation or Removal, which ICE denied on December 19, 2019. (Dkt. 11 at ¶ 25.) On December 26, 2019, Petitioner filed a second motion to reopen with the Immigration Court and a motion for stay of removal. (Dkt. 11 at ¶ 26.) Petitioner asked the IJ to reopen his "proceedings *sua sponte* so that he may apply for adjustment of status" based on the approved I-130 petition and "to pursue his claim for unlawful termination of employment." (Dkt. 14-1 at 5.) The IJ granted the motion to stay. (Dkt. 11 at ¶ 26.)

On December 27, 2019, Petitioner filed the instant habeas petition along with an emergency motion to stay his removal. (Dkts. 1, 2.) In his Petition, he asserts the Government has (1) violated his rights under the INA, the Administrative Procedures Act ("APA"), and the Fifth Amendment's Due Process Clause by arresting and detaining him without notice or release on bond, (2) violated

his rights under the INA and the Due Process Clause by seeking to remove him before the has the opportunity to apply for adjustment of status, and (3) violated his rights under the APA and Due Process Clause by seeking to remove him before he has the opportunity to participate in the wrongful termination arbitration. (Dkt. 1 at 8-9.) He asks the Court to stay his removal and order his immediate release from detention. (*Id.* at 9.) On December 30, 2020, Petitioner withdrew his emergency motion for release and a stay of removal. (Dkt. 4.) On January 8, 2020, the Court ordered the Government to respond to the habeas petition within 30 days. (Dkt. 5.)

On January 15, 2020, the IJ denied Petitioner's second motion to reopen, concluding that the motion was untimely and number-barred and finding that Petitioner had not shown the "exceptional circumstances" necessary to warrant *sua sponte* reopening. (*See* Dkt. 14-1.) On February 4, 2020, Petitioner filed a notice of appeal with the BIA, and his appeal remains pending. (Dkt. 11 at ¶ 31.) Petitioner has not requested a stay of removal from the BIA. (*Id.*)

On February 7, 2020, the Government moved to dismiss this action for lack of jurisdiction. (Dkt. 6.) On February 10, 2020, ICE informed Petitioner that given the absence of a stay, it would schedule his removal. (Dkt. 11 at ¶ 33.)

On February 13, 2020, Petitioner filed a second emergency motion for a temporary restraining order, asking the Court to stay his removal and order his release from detention so he could participate in the March 2, 2020 arbitration in person. (Dkt. 8.) The Government opposed the motion. (Dkt. 9.) On February 14, 2020, the Honorable James L. Robart entered an order temporarily staying Petitioner's removal pending additional briefing and denying his request for release. (Dkt. 12.) The Government timely filed a supplemental brief (Dkt. 13), and Petitioner filed a supplemental reply and an opposition to the Government's motion to dismiss (Dkts. 15, 16). In

addition, because Judge Robart did not grant his request for release, Petitioner rescheduled the arbitration for July 13, 2020. (*See* Dkt. 15 at 9.)

On June 23, 2020, Petitioner received a bond hearing before an IJ pursuant to *Aleman-Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020). The IJ denied bond, finding that the Government met its burden of presenting clear and convincing evidence that Petitioner presents a flight risk. (Dkt. 17-1.) Petitioner's appeal of that decision is due July 23, 2020. (*Id.*)

## III.    DISCUSSION

Petitioner asks the Court to stay his removal and order his release from immigration detention because the Government has violated his rights by (1) seeking to remove him before he has the opportunity to apply for adjustment of status, receive a decision on his application for a provisional unlawful presence waiver, and participate in the wrongful termination arbitration, and (2) arresting and detaining him without notice or release on bond. (Dkt. 1 at 8-9; *see also* Dkts. 15, 16.) The Government moves to dismiss and opposes Petitioner's motion to stay on the basis that this Court does not have jurisdiction to stay his removal and that Petitioner is not entitled to release.[2] Petitioner contends the Court has jurisdiction under the applicable statutes or, alternatively, the Suspension Clause. Petitioner also maintains that he satisfies the requirements to obtain a stay of removal and release from detention pending resolution of his collateral proceedings.

For the reasons discussed below, the Court concludes (1) it does not have jurisdiction to consider Petitioner's claims related to his motion to reopen to adjust status or request for a stay to

---

[2] The Government's briefing does not directly contest the Court's jurisdiction over Petitioner's claims related to his arrest and detention. To the extent the Government does raise such a challenge, the Court finds that it has jurisdiction. *See Ahmad v. Whitaker*, No. C18-287, 2018 WL 6928540, at *4 (W.D. Wash. Dec. 4, 2018), *R & R adopted*, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019) (rejecting government's argument that 8 U.S.C. § 1252(g) precluded jurisdiction over challenge to revocation of OSUP and collecting cases).

REPORT AND RECOMMENDATION - 7

participate in the arbitration; (2) it has jurisdiction pursuant to the Suspension Clause to consider Petitioner's claims related to his provisional unlawful presence waiver application; (3) there are serious questions going to the merits of Petitioner's claim that he has a right to a decision on his provisional unlawful presence waiver application before being removed; (4) Petitioner has satisfied the other requirements to obtain a stay of removal while this claim is further litigated; and (5) his arrest and detention are lawful.

A.    Statutory Framework Regarding Habeas Jurisdiction

       Federal district courts may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which repealed the existing scheme for judicial review of final orders of deportation and replaced it with a more restrictive scheme. *See Reno v. Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 474 (1999) ("*AADC*"). Among other amendments to the INA, the IIRIRA added the following provision:

> Except as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any [noncitizen] under this chapter.

8 U.S.C. § 1252(g) (1996) (emphases added). In the REAL ID Act of 2005, Congress amended § 1252(g) to clarify that the statute's jurisdictional restrictions applied to habeas actions. *See* REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310-11 (amending 8 U.S.C. § 1252(g)). Section 1252(g) now provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), *including section 2241 of Title 28, or any other habeas corpus provision,* and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising

from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter.

8 U.S.C. § 1252(g) (2017) (emphasis added).

The REAL ID Act also amended the INA to "expressly eliminate[] habeas review over all final orders of removal . . . ." *A. Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007). The INA now provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). In addition,

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).[3] Courts have described § 1252(b)(9) as a "zipper" clause because it consolidates judicial review to the courts of appeals. *See, e.g.*, *AADC*, 525 U.S. at 483. "Through this section, 'Congress made clear that review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding.'" *A. Singh*, 499 F.3d at 976 (quoting H.R. Rep. No. 109-72, at 173, 2005 U.S.C.C.A.N. 240, 298).

The REAL ID Act, however, was "not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" *V. Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (quoting H.R. Rep. No. 109-72 at 175). Thus, as a general rule, noncitizens "may continue to bring collateral legal challenges to [DHS's] detention authority . . .

---

[3] The first sentence of § 1252(b)(9) was added by the IIRIRA, and the second was added by the REAL ID Act. *A. Singh*, 499 F.3d at 977-78.

REPORT AND RECOMMENDATION - 9

1    through a petition for habeas corpus." *Id.* (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*,

2    535 F.3d 942, 946 (9th Cir. 2008) (alteration in *V. Singh*)).

3    B.    <u>Application of § 1252(g) to Petitioner's Claims</u>

4        In moving to dismiss, the Government relies on *Diaz-Amezcua v. Barr*, 402 F. Supp. 3d

5    963 (W.D. Wash. 2019), to argue that § 1252(g) precludes the Court from staying this action to

6    allow Petitioner to pursue additional administrative remedies unless it finds a violation of the

7    Suspension Clause, which the Government maintains is not violated here.[4] (Dkt. 6.) Mr. Diaz-

8    Amezcua filed a habeas petition to obtain a stay of his removal pending a ruling by the BIA on his

9    motion to reopen to allow him to apply for asylum based on changed conditions in Mexico, which

10   he claimed put him in fear for his safety. *Diaz-Amezcua*, 402 F. Supp. 3d at 965. The Court entered

11   a temporary stay of removal and the Government moved to dismiss. Although Mr. Diaz-Amezcua

12   claimed he had a statutory right to move to reopen to seek asylum, the Court held that the plain

13   meaning of § 1252(g) deprived it of jurisdiction to stay Mr. Diaz-Amezcua's removal pending

14   resolution of his motion to reopen. *Id.* The Court, however, concluded that § 1252(g), as applied

15   to Mr. Diaz-Amezcua, violated the Suspension Clause and therefore declined to vacate the stay.

16   *Id.* at 966-67.

17       Petitioner does not attempt to distinguish *Diaz-Amezcua* but instead asks the Court to

18   reconsider its statutory interpretation in that case. (Dkt. 15 at 1.) The Court believes *Diaz-Amezcua*

19   was correctly decided but will consider Petitioner's arguments and independently assess whether

20   each of his claims falls within § 1252(g)'s jurisdictional carve-out.

21

22

23

---

[4] In *Diaz-Amezcua*, the Honorable Barbara J. Rothstein adopted the Report and Recommendation of the undersigned.

REPORT AND RECOMMENDATION - 10

1         1.     *Section 1252(g) Generally*

2         At the time Congress enacted the IIRIRA, the Immigration and Naturalization Service

3  ("INS") regularly exercised its prosecutorial discretion to defer commencing removal proceedings,

4  adjudicating cases, and executing removal orders. *AADC*, 525 U.S. at 483-84. The "INS's exercise

5  of this discretion opened the door to litigation in instances where the INS chose *not* to exercise it,"

6  and some courts found that the INS's exercise of prosecutorial discretion violated the equal

7  protection or due process clauses. *Id.* at 484-85 (emphasis in original). Against this backdrop,

8  Congress enacted § 1252(g) to "give some measure of protection to 'no deferred action' decisions

9  and similar discretionary decisions." *Id.*; *see also id.* at 485 n.9 ("Section 1252(g) was directed

10  against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion.").

11        Section 1252(g) thus strips courts of "jurisdiction to hear any cause or claim by or on behalf

12  of any [noncitizen] *arising from* the decision or action by the Attorney General to *commence*

13  proceedings, *adjudicate* cases, or *execute* removal orders . . . ." 8 U.S.C. § 1252(g) (emphases

14  added). The Supreme Court has interpreted this provision narrowly and declined to hold that it

15  "sweep[s] in any claim that can technically be said to 'arise from' the three listed actions of the

16  Attorney General." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (citing *AADC*, 525 U.S. at

17  482). Instead, the Supreme Court has "read the language to refer to just those three specific actions

18  themselves." *Id.* (citing *AADC*, 525 U.S. at 482-83). The Ninth Circuit has added that § 1252(g)

19  precludes consideration of "not only a decision in an individual case *whether* to commence, but

20  also *when* to commence, a proceeding." *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir.

21  2002) (emphases in original). Nevertheless, courts still have jurisdiction over "many other

22  decisions or actions that may be part of the deportation process—such as the decisions to open an

23  investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include

1    various provisions in the final order that is the product of the adjudication, and to refuse

2    reconsideration of that order." *AADC*, 525 U.S. at 482; *see also Arce v. United States*, 899 F.3d

3    796, 800 (9th Cir. 2018) (per curiam) ("A decision or action to violate a court order staying

4    removal similarly falls outside of the statute's jurisdiction-stripping reach.").

5         Following the Supreme Court's directive, the Ninth Circuit has interpreted § 1252(g)

6    narrowly, *Arce*, 899 F.3d at 800, and allowed injunctive relief, including stays of removal, in cases

7    where the claims did not arise from the decision or action to commence proceedings, adjudicate

8    cases, or execute removal orders. For example, in *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1989),

9    the court rejected the government's argument that the district court did not have jurisdiction to

10   order relief that interfered with its attempts to execute deportation orders against the plaintiff-class

11   members. *Id.* at 1052. The court concluded that the plaintiffs' challenge to procedures used in their

12   removal proceedings did not implicate the discrete actions identified in § 1252(g) and instead were

13   "general collateral challenges to unconstitutional practices and policies used by the agency." *Id.*

14   (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)). Because the district

15   court had jurisdiction over the plaintiffs' claims, the Ninth Circuit determined it also had

16   jurisdiction to order adequate remedial measures, including stays of removal. *Id.* at 1053.

17         The Ninth Circuit has also assumed jurisdiction over a case challenging a directive issued

18   by the BIA Chairman and the Chief Immigration Judge ordering IJs to stop issuing decisions

19   granting suspension of deportation. *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1117-18 (9th Cir.

20   2001). The court explained that the "situation from which plaintiffs seek relief is closely akin to a

21   decision to include provisions in a final deportation order," which the Supreme Court had

22   identified as falling outside the scope of § 1252(g), because it directed IJs "*not* to include certain

23   provisions in a final decision." *Id.* at 1118 (citing *AADC*, 525 U.S. at 482, emphasis in original).

The court also explained that § 1252(g) was "aimed at preserving prosecutorial discretion," and that the immigration courts did not have the authority to exercise such discretion. *Id.* at 1119. Therefore, the court affirmed the district court's entry of an injunction enjoining the directive. *Id.* at 1122.

As a final example, the Ninth Circuit in *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc), held that § 1252(g) did not strip the district court of jurisdiction to enter injunctive relief. *Id.* at 1155. The defendants, two lawful permanent residents, were convicted of several crimes; the trial judge sentenced them as adults even though they were eligible for sentencing under the Federal Youth Corrections Act ("FYCA") and issued a Judicial Recommendation Against Deportation ("JRAD"), which barred the INS from deporting them on the basis of their convictions. *Id.* at 1148. Several years later, Congress amended the immigration laws, which provided the INS with new grounds upon which to seek the defendants' deportation. *Id.* at 1149. Subsequently, the district court set aside their convictions pursuant to the FYCA and issued a broad order sealing the record of their convictions. *Id.* at 1150-51.

One of the defendants then filed a complaint in the district court challenging the retroactive application of the statutory amendments to him and seeking "a permanent injunction barring the INS from applying the 1988 and 1990 statutory changes to him." *Id.* at 1151. The district court granted the requested relief, which had the practical effect of making the "court's previously issued JRAD a complete bar to the INS's attempts to deport" the defendant. *Id.* The Ninth Circuit held that § 1252(g) did not bar the injunction proceeding because the "gravamen" of the defendant's claim did not arise from the decision or action to commence proceedings. *Id.* at 1155. The court explained, "The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description

1   of the relevant law—forms the backdrop against which the Attorney General later will exercise

2   discretionary authority." *Id.*

3          Based on this authority, it is clear that the mere fact a habeas petitioner is seeking a stay of

4   removal is not dispositive of whether the Court has jurisdiction. The Court must instead look

5   beyond the request for a stay to the underlying claim and dismiss for lack of jurisdiction where the

6   claim arises from the decision or action to execute a removal order. *See Velarde-Flores v.*

7   *Whitaker*, 750 Fed. Appx. 606, 607 (9th Cir. 2019) (unpublished) ("Because this petition arises

8   from the government's decision to execute valid orders of removal, it facially falls within the

9   statutory jurisdictional bar. The decision whether to remove [noncitizens] subject to valid removal

10  orders who have applied for U-visas is entirely within the Attorney General's discretion."); 

11  *Garcia-Herrera v. Asher*, 585 Fed. Appx. 439, 440 (9th Cir. 2014) (unpublished) (holding that

12  challenge to ICE's decision not to delay petitioner's removal pending adjudication of his

13  application for the Deferred Action for Childhood Arrivals ("DACA") program "constitutes a

14  challenge to ICE's decision to execute a removal order" and is barred by § 1252(g)).

15         Petitioner recognizes that there is no binding authority that has addressed the claims he

16  raises here and that non-binding authority is divided over similar claims. (Dkt. 16 at 4.) He asserts,

17  however, that this Court has jurisdiction because his claims arose after the final order of removal

18  was issued against him and are collateral to the removal proceedings. (*Id.* at 1-2.) This framing of

19  the issue is not quite right—the precise question before the Court is whether his claims arose from

20  the decision or action to execute his removal order. *See* 8 U.S.C. § 1252(g). The Court considers

21  each claim below.

22

23

1

2.    *Adjustment of Status*

2

Petitioner claims that he is statutorily eligible for and has a due process right to pursue a

3

motion to reopen based on an application for adjustment of status. (Dkt. 16 at 1.) The Court

4

considered a similar claim in *Diaz-Amezcua*, namely whether Mr. Diaz-Amezcua had a statutory

5

right to move to reopen to seek asylum based on changed country conditions in Mexico. *Diaz-*

6

*Amezcua*, 402 F. Supp. 3d at 970. With respect to jurisdiction, the Court explained:

7

> District courts in this circuit are split, with a majority concluding that § 1252(g)
> strips district courts of jurisdiction.[5] *Compare, e.g.*, *Ma v. Holder*, 860 F. Supp.

8

> 2d 1048, 1057-60 (C.D. Cal. 2012) (concluding that request for stay of removal
> pending adjudication of the petitioner's motion to reopen was barred by § 1252(g));

9

> *Em v. Whitaker*, No. 18-4279, 2018 WL 6663437, at *5 (D. Ariz. Dec. 19, 2018)
> (same); *Rodriguez-Henriquez v. Asher*, No. 14-1719, 2015 WL 778115, at *4

10

> (W.D. Wash. Feb. 24, 2015) ("Mr. Rodriguez-Henriquez's request that this Court
> stay the execution of his final order of removal while he [files a motion to reopen]

11

> directly impacts the government's ability to 'execute' his removal order and is thus
> precluded by § 1252(g)."); *Tarhan v. Dep't of Homeland Sec.*, No. 11-1185, 2011

12

> WL 3703375, at *2 (W.D. Wash. Jul. 15, 2011), *R & R adopted*, 2011 WL 3684644
> (W.D. Wash. Aug. 23, 2011) ("A request to stay an order of removal based on a

13

> pending collateral claim does not escape the jurisdiction stripping provisions of the
> REAL ID Act." (quoting *Mancho v. Chertoff*, 480 F. Supp. 2d 160, 162 (D.D.C.

14

> 2007)); *with Beltran Prado v. Nielsen*, [379 F. Supp. 3d 1161, 1168 (W.D. Wash.
> 2019)] ([adopting] Report and Recommendation concluding that § 1252(g) did not

15

> strip court of jurisdiction because petitioner's claim that he had a due process right
> to challenge his removal order by filing a motion to reopen did not directly

16

> challenge the government's discretionary decision to execute his removal order);
> *Sied v. Nielsen*, No. 17-6785, 2018 WL 1142202, *14 - *15 (N.D. Cal. Mar. 2,

17

> 2018) (adopting reasoning of *Chhoeun v. Marin*, *infra*, and staying execution of
> removal order pending resolution of petitioner's motion to reopen); *Chhoeun v.*

18

---

19

5 [*Diaz-Amezcua* footnote 4] District courts outside of the Ninth Circuit are also split, with most determining that

20

they do not have jurisdiction. *Compare Hamama v. Adduci*, 258 F. Supp. 3d 828, 834-38 (E.D. Mich. 2017)
("*Hamama I*"), *rev'd on other grounds*, 912 F.3d. 869 (6th Cir. 2018) (concluding that § 1252(g) bars request to stay
removal pending motions to reopen); *Nken v. Chertoff*, 559 F. Supp. 2d 32, 36-37 (D.D.C. 2008) (concluding that

21

request for stay was barred by § 1252(g) despite petitioner's argument that stay was necessary to allow
constitutional challenge to removal prior to adjudication of his motion to reopen); *Sadhvani v. Chertoff*, 460 F. Supp.
2d 114, 121-24 (D.D.C. 2006) (concluding that court did not have jurisdiction to stay removal pending motion to

22

reopen); *Mingrone v. Adducci*, No. 17-11685, 2017 WL 4909591, at *3 - *4 (E.D. Mich. Jul. 5, 2017) (concluding
that court did not have jurisdiction to stay petitioner's removal or consider claim that it is unlawful to remove him
while his U visa application was pending); *Ibrahim v. Acosta*, No. 17-24574, 2018 WL 582520, at *4 - *5 (S.D. Fl.

23

Jan. 26, 2018) (following *Hamama I*); *with You v. Nielsen*, 321 F. Supp. 3d 451, 457-58 (S.D.N.Y. 2018)
(concluding that court had jurisdiction over claim alleging it was unlawful to remove the petitioner while a motion
to reopen was pending).

*Marin*, [306 F. Supp. 3d 1147, 1158-59 (C.D. Cal. 2018)] (concluding that court had jurisdiction to stay execution of removal order pending petitioners' motions to reopen and reasoning that the Ninth Circuit has "consistently held that district courts have jurisdiction when, as in this case, petitioners do not directly challenge their orders of removal, but rather assert a due process right to challenge the orders in the appropriate court").

*Diaz-Amezcua*, 402 F. Supp. 3d at 971-972. The Court also noted that two circuit courts have "held that § 1252(g) deprives district courts of jurisdiction to stay a noncitizen's removal to provide an opportunity to file or have a pending motion to reopen adjudicated." *Id.* at 972 (citing *Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018) ("*Hamama II*") ("Under a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review."); *Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002) (holding that "a request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order," and rejecting petitioners' argument that they were not challenging the underlying removal order and instead only seeking a stay pending a motion to reopen)). The Court ultimately agreed with the weight of circuit and district court authority and concluded that Mr. Diaz-Amezcua's claim arose from DHS's decision to execute his removal order. *Id.*

Petitioner offers no persuasive reason for the Court to deviate from *Diaz-Amezcua* and the weight of authority addressing similar claims. Petitioner attempts to untangle his claim from ICE's decision to execute his removal order by arguing that he has a statutory right to apply for adjustment of status and that this claim arises from his marriage to a U.S. citizen and his approved I-130 petition. (Dkt. 15 at 6.) In support of his claim, Petitioner cites *Fornalik v. Perryman*, 223 F.3d 523 (7th Cir. 2000). (*Id.* at 6-7.) But as discussed below, rather than helping Petitioner, *Fornalik* confirms the correctness of the Court's conclusion.

REPORT AND RECOMMENDATION - 16

The petitioner in *Fornalik* came to the United States with his mother and brothers from Poland on a tourist visa to join his father, who had become a permanent resident. *Fornalik*, 223 F.3d at 525-26. He applied for adjustment of status to permanent resident under a provision of the IIRIRA. *Id.* at 526. The INS director denied his request. *Id.* He was then placed in removal proceedings along with his mother and brothers. *Id.* For various reasons, his removal proceedings were adjudicated before those of his family members, and the INS planned to send him back to Poland without his family, even though he was a minor. *Id.*

As a result of this predicament, the petitioner filed with the INS Vermont Service Center a Form I-360 Petition for Amerasian, Widow, or Special Immigrant based on his condition as an abused child of a visa recipient. *Id.* at 527. He also filed a habeas petition based on the theory that he was entitled to an immediate adjustment of status. *Id.* The district court dismissed his habeas petition for lack of jurisdiction under § 1252(g), finding that his claim arose from the Attorney General's decision to commence removal proceedings against him. *Id.* at 528. The petitioner appealed this decision, and before the Seventh Circuit had the opportunity to decide his appeal, the Vermont Service Center granted his I-360 petition and notified him that it would defer action on his removal order for 15 months unless it provided him appropriate notice of reasonable cause to terminate the deferred action decision prior to that time. *Id.* at 528-29. The Chicago INS office, however, proceeded to enforce the removal order. *Id.* at 525.

On appeal, the INS argued that § 1252(g) precluded the court from staying execution of the removal order. *Id.* at 530. The Seventh Circuit characterized *AADC* as holding "that § 1252(g) precludes the district courts from acting when the decision about which the [noncitizen] is complaining is one of the three listed in the statute: commencing proceedings, adjudicating a case,

or executing a removal order." *Id.* at 531. The court rejected the government's argument, explaining:

> Here, [the petitioner's] claim that he is entitled to an adjustment of status to lawful permanent resident has little to do with a "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." He asserts instead that the district director's denial of his December 1996 adjustment of status application was incorrect as a matter of law. Since the INS did not issue a Notice to Appear (the initial filing in a removal case) until more than ten months later, on October 14, 1997, it is hard to see how we should construe his complaint as one that requests relief from a decision to commence proceedings. Similarly, although [the petitioner] obviously wants this court to stop the execution of a removal order, that fact comes into the case only incidentally. His claim is not that the Attorney General is unfairly executing a removal order, but rather that a prior, unrelated error makes his removal improper. This makes our case entirely different from other decisions of this circuit that have applied *AADC*. *See, e.g.*, *Fedorca v. Perryman*, 197 F.3d 236 (7th Cir. 1999) (challenge to a decision to execute a removal order), *Botezatu v. INS*, 195 F.3d 311 (7th Cir. 1999) (challenge to a refusal to grant humanitarian parole instead of enforcing removal order).

*Id.* at 532.

*Fornalik* is helpful for its framing of the jurisdictional question. The court explained "that § 1252(g) precludes the district courts from acting when *the decision about which the [noncitizen] is complaining* is one of the three listed in the statute: commencing proceedings, adjudicating a case, or executing a removal order." *Id.* at 531 (emphasis added). Indeed, all the relevant Ninth Circuit cases involve challenges to specific government actions, and when the challenge was to the decision to commence proceedings, adjudicate a case, or execute a removal order, the court dismissed for lack of jurisdiction; otherwise, the court held that the claim fell outside the scope of § 1252(g). *Compare Verlarde-Flores*, 750 Fed. Appx. at 607 (no jurisdiction over challenge to removal while U-visa application was pending); *Garcia-Herrera*, 585 Fed. Appx. at 440 (no jurisdiction over challenge to ICE's decision not to delay removal pending adjudication of DACA application); *with Arce*, 899 F.3d at 799-800 (assuming jurisdiction over challenge to violation of

court-ordered stay); *Hovsepain*, 359 F.3d at 1155-56 (assuming jurisdiction over challenge to retroactive application of statutory amendments); *Barahona-Gomez*, 236 F.3d at 1118 (assuming jurisdiction over challenge to directive from immigration court); *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1149-50 (9th Cir. 2000) (en banc) (assuming jurisdiction over challenge to INS policy as inconsistent with statute); *Walters*, 145 F.3d at 1053 (assuming jurisdiction over challenge to government procedures during document fraud proceedings). In this case, Petitioner's framing of his claim—that he has a statutory right to apply for adjustment of status—omits any reference to a challenged governmental action. What Petitioner is actually complaining about is ICE's decision to execute his removal order before his motion to reopen is adjudicated. Petitioner's claim thus arises from ICE's decision to execute his removal order, and the Court does not have jurisdiction to consider it.

3.    *Petitioner's USCIS Applications and Request for Provisional Waiver*

Petitioner claims that he is statutorily eligible for and has a due process right to a decision on his pending USCIS applications and request for provisional waiver. (Dkt. 16 at 1.) Before addressing jurisdiction, the Court outlines the applicable legal background.

a.    *Legal Background*

A noncitizen who has been ordered removed is inadmissible for reentry to the United States for a period of five, ten, or twenty years depending on the circumstances. *See* 8 U.S.C. §§ 1182(a)(9)(A)(i), (A)(ii), (B)(i)(II). A noncitizen who is "inadmissible" is ineligible to receive a visa for admission to the United States as a lawful permanent resident. 8 U.S.C. § 1182(a). The DHS Secretary, however, may waive the inadmissibility bar. *See* 8 U.S.C. §§ 1182(a)(9)(A)(iii), (B)(v). Prior to 2013, a noncitizen who wanted to apply for this waiver of admissibility and seek lawful permanent resident status was required to first depart the United States and then apply for

readmission through a procedure called consular processing. *See Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives*, 78 Fed. Reg. 536-01, 536 (Jan. 3, 2013); *Expansion of Provisional Unlawful Presence Waivers of Inadmissibility*, 81 Fed. Reg. 50244-01, 50245 (July 26, 2016). This often caused a lengthy separation between the applicant and his or her U.S. citizen or lawful permanent resident spouse, children, and/or parents. 78 Fed. Reg. at 536. To remedy this problem and the hardship it caused families, DHS amended its regulations "to allow certain immediate relatives of U.S. citizens who are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visa applications." *Id.* DHS amended and expanded the regulations in 2016. 81 Fed. Reg. at 50244-45.

The current regulations set forth a three-step process for a noncitizen to follow to seek a provisional unlawful presence waiver of inadmissibility from USCIS. *See* 8 C.F.R. § 212.7(e). First, the U.S. citizen spouse must file a Petition for Alien Relative, Form I-130. *See* 8 C.F.R. § 212.7(e)(3)(vi); 8 U.S.C. § 1182(a)(9)(B)(v). After obtaining an approved I-130 petition, a noncitizen who has been ordered removed must file and obtain an approved Application for Permission to Reapply for Admission to the United States After Deportation or Removal, Form I-212. *See* 8 C.F.R. § 212.7(e)(4)(iv); 8 C.F.R. § 212.2(j); 81 Fed. Reg. at 50245. If USCIS approves the I-212 application, the noncitizen may file an Application for Provisional Unlawful Presence Waiver, Form I-601A. *See* 8 C.F.R. § 212.7(e)(5). Once USCIS provisionally approves the I-601A application, the noncitizen must leave the United States and appear for an immigrant visa interview at a United States consulate, and the Department of State may issue an immigrant visa if no other inadmissibility ground applies. *See* 8 C.F.R. § 212.7(e)(12). If the immigrant visa is approved, the

1    noncitizen may return to the United States and become a lawful permanent resident without the

2    lengthy period of separation families experienced before the 2013 regulations. *See id.*

3                    b.      *Jurisdiction*

4            Like with motions to reopen, the Ninth Circuit has not considered whether § 1252(g) bars

5    courts from considering claims that a noncitizen is entitled to apply for a provisional waiver and

6    therefore cannot be removed pending a decision on the application. Lower courts are divided.

7    *Compare, e.g.*, *Probodanu v. Sessions*, 387 F. Supp. 3d 1031, 1041-42 (C.D. Cal. 2019) (§ 1252(g)

8    strips court of jurisdiction over claim that government lacks authority to remove a noncitizen who

9    is in the process of applying for a provisional unlawful presence waiver because this claim arises

10   from the government's discretionary determination of when to enforce a removal order); *Karr v.*

11   *Meade*, --- F. Supp. 3d ----, 2020 WL 1343506, at *7 (S.D. Fl. Mar. 22, 2020), *appeal pending*,

12   Case. No. 20-11144 (11th Cir. 2020) (same); *Mamadjonova v. Barr*, No. 19-1217, 2019 WL

13   6174678, at *7 (D. Conn. Nov. 20, 2019) (§ 1252(g) bars jurisdiction over claim that the petitioner

14   had a due process right to complete the provisional unlawful presence waiver process; rejecting

15   argument that the petitioner was not challenging ICE's discretionary decision to execute his

16   removal order); *Pinto-Barrera v. Sifuentez*, No. 18-325, 2018 WL 6027114, at *2 (W.D. Tex. Nov.

17   16, 2018) (same); *with M'Bagoyi v. Barr*, 423 F. Supp. 3d 99, 105 (M.D. Penn. 2019) (exercising

18   jurisdiction because the petitioner challenged "only the legal authority to detain and attempt to

19   remove him before his finishes the provisional waiver process"); *Lin v. Nielsen*, 377 F. Supp. 3d

20   556, 563 (D. Md. 2019) (§ 1252(g) does not bar review of right to complete provisional waiver

21   application before removal); *Martinez v. Nielsen*, 341 F. Supp. 3d 400, 406 (D.N.J. 2018) (§

22   1252(g) does not bar challenge to ICE's legal authority to exercise discretion when petitioner has

23

1  right to seek provisional waiver); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 954 (S.D.N.Y. 2018)

2  (same).

3      With respect to the jurisdictional analysis, the Court sees no meaningful distinction

4  between Petitioner's claims related to adjustment of status through the motion to reopen and those

5  related to the provisional waiver. The governmental action he is challenging is ICE's decision to

6  execute his removal order before he has had an opportunity to complete the provisional waiver

7  process. Petitioner's claims thus arise from ICE's decision to execute his removal order and are

8  barred by § 1252(g).

9          4.    *Petitioner's Arbitration*

10     Petitioner's final claim in support of his request for a stay of removal is that his removal

11  prior to the arbitration of his wrongful termination action violates the APA and the Due Process

12  Clause. (Dkt. 1 at 8-9.) Again, the only governmental action Petitioner is challenging is his

13  removal, thus the Court concludes that these claims arise from the ICE's decision to execute his

14  removal order and are barred by § 1252(g).

15  C.   Suspension Clause

16     The Suspension Clause provides, "The Privilege of the Writ of Habeas Corpus shall not be

17  suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S.

18  Const. Art. I § 9 cl. 2. "The Supreme Court has held, however, that 'the substitution of a collateral

19  remedy which is neither inadequate nor ineffective to test the legality of a person's detention does

20  not constitute a suspension of the writ of habeas corpus.'" *Puri v. Gonzales*, 464 F.3d 1038, 1040

21  (9th Cir. 2006) (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977)).

22

23

In moving to dismiss, the Government concedes that under the Court's analysis in *Diaz-Amezcua*, the Suspension Clause applies to Petitioner.[6] (Dkt. 6 at 2 (citing *Diaz-Amezcua*, 402 F. Supp. 3d at 966-67).) The parties thus dispute whether Congress has provided an adequate substitute to habeas review. The Court discusses each of Petitioner's claims below.

1.    *Adjustment of Status*

"The Ninth Circuit has held 'that a potential motion to reopen at the administrative level and the possibility of judicial review thereafter provides the necessary process to alleviate Suspension Clause concerns.'" *Diaz-Amezcua*, 402 F. Supp. 3d at 976 (quoting *Iasu v. Smith*, 511 F.3d 881, 893 (9th Cir. 2007)). Indeed, motions to reopen can be litigated from abroad even after a noncitizen is removed. *Id.* (collecting Ninth Circuit cases). In addition, noncitizens can seek an administrative stay of removal from the immigration courts.

In *Diaz-Amezcua*, the Court found that as applied to Mr. Diaz-Amezcua, the motion to reopen process was an inadequate substitute for habeas because he had presented evidence that due to dangerous conditions in Mexico, he would be unable to continue litigating from abroad. *Id.* at 967, 975-78 (collecting district court cases finding Suspension Clause violations under similar circumstances). Petitioner's situation is markedly different from Mr. Diaz-Amezcua's because he does not allege that he would be unable to pursue the motion to reopen based on dangerous country conditions. Rather, he claims he does not know what he would do for work if he is removed and "would not have the wherewithal to continue pursuing litigation." (Dkt. 16-2 at ¶ 6.) The Court is not persuaded that Petitioner's anticipated economic challenges and lack of motivation are

---

[6] The Supreme Court recently addressed a Suspension Clause challenge to a different provision of the IIRIRA, 8 U.S.C. § 1252(e)(2), which limits judicial review of expedited removal order. *Department of Homeland Security v. Thuraissigiam*, --- S. Ct. ----, 2020 WL 3454809 (June 25, 2020). The parties have not filed a notice of supplemental authority regarding *Thuraissigiam* or asked for an opportunity to provide additional briefing regarding this decision. Accordingly, the Court proceeds on the briefs submitted before *Thuraissigiam*.

1    sufficient to establish that the motion to reopen process is an inadequate substitute for habeas in

2    this case.

3    Petitioner also argues that because he is only eligible to adjust his status while he is

4    physically present in the United States, his motion to reopen will be denied as moot after he is

5    removed, thereby preventing him from obtaining a decision on his application to adjust his status.

6    (Dkt. 16 at 7; Dkt. 15 at 10.) Petitioner does not cite any cases in support of his argument that the

7    Suspension Clause should be invoked in these circumstances.[7] The Court has identified three

8    similar cases, all of which found no Suspension Clause violation. *Barros Anguisaca v. Decker*,

9    393 F. Supp. 3d 433 (S.D.N.Y. 2019) (rejecting argument that motion to reopen process was an

10    inadequate substitute for habeas even though the petitioner would become ineligible for the relief

11    sought through the motion to reopen if he were removed); *Majano Garcia v. Martin*, 379 F. Supp.

12    3d 1301 (S.D. Fl. 2018) (finding no Suspension Clause violation where § 1252 precluded

13    jurisdiction over request for stay pending adjudication of I-130 petition); *Sheiko v. Giles*, No. 19-

14    1859, 2019 WL 7166059, at *5 - *6 (C.D. Cal. Oct. 18, 2019) (finding no Suspension Clause

15    violation where § 1252(g) precluded review of the petitioner's claim that he was entitled to a stay

16    to litigate him motion to reopen based on approved I-130 petition). The court in *Barros Anguisaca*

17    explained:

18    > Although Barros appears correct factually that this particular form of relief would
19    > be extinguished were he removed, the ultimate issue under the Suspension Clause
20    > is different. It is whether the procedural processes now available to Barros to
21    > challenge his removal, including his right to reopen removal proceedings, would be
22    > an inadequate or ineffective substitute for habeas review. Barros has not identified
23    > any case authority—and the Court is not aware of any—holding the Suspension
24    > Clause is violated in such a circumstance.

---

[7] Petitioner cites *Fatty v. Nielsen*, No. 17-1535, 2018 WL 3491278 (W.D. Wash. July 20, 2018), which did not discuss the Suspension Clause.

1    *Barros Anguisaca*, 393 F. Supp. 3d at 352. The Court agrees with the *Barros Anguisaca* court;

2    Petitioner has not shown that the application of § 1252(g) to his adjustment of status claim violates

3    the Suspension Clause.

4              Finally, Petitioner argues that even though he "does not have the right to have his motion

5    to reopen or his application for adjustment of status granted, he does have the right to challenge in

6    habeas proceedings a legally erroneous failure to exercise discretion." (Dkt. 16 at 7-8 (citing *I.N.S.*

7    *v. St. Cyr*, 533 U.S. 289 (2001) ("even though the actual granting of relief [is] . . . a matter of grace

8    . . . a deportable alien ha[s] a right to challenge the Executive's failure to exercise the discretion

9    authorized by law"), and *Sean B. v. McAleenan*, 412 F. Supp. 3d 472 (D.N.J. 2019) ("Petitioner

10   may or may not prevail before the BIA or the Court of Appeals; the Constitution requires, however,

11   that his opportunity to put his case be preserved.")).) But Petitioner does not argue here that the IJ

12   committed legal error in declining to exercise her authority to reopen his removal proceedings *sua*

13   *sponte*. To the extent he challenges her exercise of discretion, he must do so before the BIA and

14   in a petition for review to the Ninth Circuit, both tribunals from which he may request a stay of

15   removal.

16             In sum, Petitioner fails to establish that the application of § 1252(g) to preclude habeas

17   jurisdiction over his claims related to his motion to reopen to request adjustment of status violates

18   the Suspension Clause.[8]

19             2.      *Provisional Waiver Application*

20             Petitioner argues that there is no "adequate and effective" mechanism for him to pursue his

21   claim that he is entitled to a decision on a provisional waiver because once he is removed, he will

22

23   _____

[8] Even if the Court were to assume jurisdiction, it would find that Petitioner has not shown he has a legal right to remain in the United States pending adjudication of his motion to reopen seeking to adjust his status based on the approved I-130 petition. *See Majano Garcia*, 379 F. Supp. 3d at 1308 (removal while application for lawful permanent resident was pending did not violate the INA or due process).

REPORT AND RECOMMENDATION - 25

be separated from his family for the potentially lengthy period necessary to pursue consular processing and thereby lose the benefit of the provisional waiver program. (Dkt. 15 at 10.) The Government contends that there are adequate alternatives to habeas because Petitioner can seek an administrative stay of removal and also may apply for lawful permanent residency after he is removed through consular processing. (Dkt. 13 at 14-15.)

The Court has identified two cases that have discussed whether a noncitizen has adequate and effective alternatives to a petition for writ of habeas corpus to address an asserted right to apply for a provisional waiver. In *Jimenez v. Nielsen*, 334 F. Supp. 3d 370 (D. Mass. 2018), the court concluded that "in this case, the Constitution requires that [because petitioners raise a colorable claim], some court must have jurisdiction to review petitioners' claim that by deporting or removing them without considering their applications for provisional waivers, DHS is failing to exercise the discretion required by 8 C.F.R. § 212.7, even though this court could not review a discretionary decision for possible abuse if DHS's discretion was actually exercised." *Id.* at 385. Accordingly, the court exercised jurisdiction pursuant to the Suspension Clause. *Id.* In contrast, the court in *Pinto-Barrera* concluded that the petitioner had an adequate alternative to habeas relief because she filed a Form I-246 request for stay of removal with ICE and could pursue consular processing after removal. 2018 WL 6027114, at *2.

Having carefully considered the above authority, the Court concludes that neither an application for an administrative stay of removal with ICE nor consular processing are adequate and effective substitutes for Petitioner's habeas petition, which alleges the Government would violate his rights under the INA and Due Process Clause if it removed him prior to obtaining a decision on whether he is entitled to a provisional waiver. Accordingly, the Court deems it appropriate to exercise jurisdiction over this claim pursuant to the Suspension Clause.

3.     *Arbitration*

The Government contends that Petitioner has an adequate substitute to habeas relief because he can attend the arbitration via telephone, while Petitioner asserts that he will not be able to effectively pursue his claim for wrongful termination benefits from the Republic of the Gambia because he must be physically present at the arbitration to meaningfully present his case. This claim implicates Petitioner's request for release as much as it implicates his request for a stay of removal—a stay of removal alone would not be sufficient to remedy the wrong he asserts as he claims in-person participation is necessary. Indeed, Petitioner was in the United States on March 2, 2020, when the arbitration was originally scheduled to occur, and rather than attend via telephone, he rescheduled the arbitration for July 13, 2020. As discussed below with respect to Petitioner's challenge to his arrest and detention—a claim over which the Court has jurisdiction— Petitioner was lawfully arrested and detained and has presented no authority that would entitle him to release in order to attend the arbitration in person. Petitioner has not shown that § 1252(g) suspends the writ in violation of the Suspension Clause as applied to his claim that he is entitled to personally participate in the arbitration.

D.     <u>Motion for Stay of Removal and Immediate Release</u>

Because the Court has concluded that it has jurisdiction over Petitioner's challenges to his removal prior to a decision on his provisional waiver application and to his arrest and detention, the Court will consider his motion for injunctive relief on these bases. As discussed below, the Court concludes Petitioner is entitled to a stay of removal but not immediate release.

1.     *Legal Standard*

The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S.

1    1345, 1347 n.2 (1977). A preliminary injunction is "an extraordinary remedy that may only be

2    awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def.*

3    *Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief

4    requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely

5    to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips

6    in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586

7    F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). The moving party bears the burden

8    of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at

9    22.

10    As an alternative to this test, a preliminary injunction is appropriate if "serious questions

11    going to the merits were raised and the balance of the hardships tips sharply" in the moving party's

12    favor, thereby allowing preservation of the status quo when complex legal questions require further

13    inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir.

14    2011). However, the "serious questions" approach supports a court's entry of injunctive relief only

15    so long as the moving party also shows that there is a likelihood of irreparable injury and that the

16    injunction is in the public interest. *Id.* at 1135.

17        2.    *Provisional Waiver Application*

18    Petitioner contends that his removal before he has the opportunity to obtain a decision on

19    his provisional waiver application violates the INA and the Due Process Clause. He asserts that

20    where a person is statutorily eligible to apply for an immigration benefit, he or she has a right

21    protected by due process to file an application for that benefit and have the application adjudicated

22    in a lawful manner. (Dkt. 16 at 10 (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 308 (2001)).) The

23

Government does not address the merits of Petitioner's provisional waiver application claim in its briefing.

The Court concludes that there are serious questions going to the merits of this claim. Some courts have determined that eligible noncitizens have the right to apply for a provisional unlawful presence waiver:

> When a government agency promulgates "[r]egulations with the force and effect of law," they supplement the bare bones" of federal statutes; the government agency must follow its own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954). The *Accardi* doctrine applies with particular force when "the rights of individuals are affected." *Morton v. Ruiz*, 415 U.S. 199, 232, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). Accordingly, under *Accardi*, when the Government promulgates a regulatory process for obtaining relief, a "right to seek relief is created, even when there is no "right to the relief itself." *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (citing *Accardi*, 347 U.S. at 268, 74 S.Ct. 499).
>
> Here, the DHS has promulgated, through a notice and comment process, detailed regulations that make available a process for obtaining a provisional unlawful presence waiver of inadmissibility to [noncitizens] with outstanding final orders of removal. These regulations create a "right to seek" the provisional waiver even when there is no "right to the [waiver] itself." *Id.* Accordingly, the Court concludes that Petitioner has a right to apply for a provisional unlawful presence waiver.

*Calderon*, 330 F. Supp. 3d at 957-58; *see also Martinez*, 341 F. Supp. 3d at 409-10 (same); *M'Bagoyi*, 423 F. Supp. 3d at 108 ("DHS's regulations create the right to seek the provisional waiver even if there is no right to the waiver itself."); *Jimenez*, 334 F. Supp. 3d at 389 ("[T]he regulations create an entitlement to receive a decision concerning a provisional waiver in the United States."). The court in *Calderon* also found that the government's attempt to "strip the Petitioner's right with no explanation or justification" by removing him while his application was pending violated his rights under the Due Process Clause. *Calderon*, 330 F. Supp. 3d at 958-59. The court in *Jimenez* similarly concluded,

> ICE may not order the removal of [a noncitizen] pursuing a provisional waiver solely because he or she is subject to a final order of removal. Rather, ICE must

REPORT AND RECOMMENDATION - 29

consider the reasons for the provisional waiver regime and the facts of the [noncitizen's] particular case before deciding to order a removal that eliminates CIS's opportunity to decide the merits of the request, and the right of the [noncitizen] to pursue, and potentially receive, a provisional waiver.

*Jimenez*, 334 F. Supp. 3d at 390. Although at least one court has concluded that a noncitizen does not have the right to remain in the United States during the pendency of the provisional waiver application process, *Karr*, 2020 WL 1343506, at *8, the Court finds that the authority favoring Petitioner's position establishes that the serious questions standard is satisfied.[9]

The Court also concludes that Petitioner has established a likelihood of irreparable harm if he is removed. "Although removal is a serious burden for many [noncitizens], it is not categorically irreparable." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, to satisfy this element, a petitioner "must show that there is a reason specific to his or her case, as opposed to a reason that would apply equally well to all [noncitizens] and all cases, that removal would inflict irreparable harm . . . ." *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) (per curiam).  Factors bearing on irreparable harm include, but are not limited to, separation from family members, medical needs, and potential economic hardship. *Id.* at 969-70. Petitioner's removal would separate him from his wife and children for an indeterminate amount of time, causing emotional damage and economic hardship.

Where the Government is the opposing party, the balance of hardships and public interest prongs merge. *Leiva-Perez*, 640 F.3d at 970. In this case, the balance of hardships tips strongly in Petitioner's favor. Although the Government may incur additional custodial expense for

---

[9] Courts have found a "substantial case" or "serious questions" when neither the Ninth Circuit nor Supreme Court have addressed the question raised in the petition and when the case involves a constitutional question or otherwise addresses a pressing legal issue. *See Lucas v. Nielson*, No. 18-7763, 2018 WL 6832091, at *4 (N.D. Cal. Dec. 28, 2018) (granting temporary restraining order staying removal); *Morse v. Servicemaster Global Holdings, Inc.*, No. 10-628, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013) (addressing request for stay pending appeal in non-immigration case).

continuing to detain Petitioner, denying Petitioner's request for a stay is likely to result in irreparable harm, as discussed above. The public interest also favors Petitioner. While this case involves competing public interests—the public interest is served by the prompt execution of removal orders on one hand, and by preventing the wrongful removal of noncitizens on the other— the Court concludes that the interest in ensuring that Petitioner is not wrongfully removed weighs most heavily based on the facts in this case.

Based on the foregoing, the Court concludes that Petitioner is entitled to a stay of removal pending further order of the Court.

3.      *Arrest and Detention*

Petitioner contends that ICE does not have the statutory authority to hold him because he is neither a danger to the community nor a flight risk. (*See* Dkt. 15 at 11-13; Dkt. 16 at 9-10.) The Government asserts that ICE's decision to revoke his release in order to effectuate his final order of removal was fully consistent with the law. (Dkt. 13 at 16-18.) The Court agrees with the Government. As Petitioner has not shown a likelihood of success or serious questions going to the merits of this claim, the Court need not consider the remaining *Winter* factors.

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens who have been ordered removed. Under § 1231(a), the DHS is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. §§ 1231(a)(2), (a)(1)(B). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision, including those who are removable under 8 U.S.C. § 1227(a)(1)(C) and those who have been determined "to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). The Supreme Court has held, however, that § 1231(a)(6) does not authorize "indefinite" detention. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Thus, "once

removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)]" and DHS must release the noncitizen. *Id.* at 699; *see also Tuan Thai v. Ashcroft*, 366 F.3d 790, 794-98 (9th Cir. 2004) (holding that DHS cannot continue to detain a noncitizen beyond the removal period if removal is no longer reasonably foreseeable unless it is a matter of national security); 8 C.F.R. § 241.13 (regulations governing determinations of indefinite detention).

In this case, the removal period began on the date Petitioner's removal order became administratively final. *See* 8 U.S.C. § 1231(a)(2)(B)(i). Although ICE was statutorily authorized to detain Petitioner beyond the removal period because he was removable under § 1227(a)(1)(C), *see* 8 U.S.C. § 1241(a)(6), it determined that removal was not reasonably foreseeable due to noncooperation by the Republic of the Gambia in issuing a travel document. (*See* Dkt. 11 at ¶ 10.) Accordingly, ICE released him on an OSUP. *See* 8 C.F.R. §§ 241.13(a)-(h).

Because Petitioner was released after a finding that his removal was not reasonably foreseeable, the revocation of that release was governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The regulations require, "Upon revocation, the [noncitizen] will be notified of the reasons for the revocation of his or her release." 8 C.F.R. § 241.13(i)(3). In addition, ICE "will conduct an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for the revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

ICE complied with these regulations in Petitioner's case. After it obtained a travel document to execute Petitioner's removal to the Republic of the Gambia, ICE officers arrested Petitioner, provided him notice of the reason for the revocation, and conducted an informal

interview. Petitioner does not dispute these facts but argues that ICE did not have the authority under § 1231(a)(6) to detain him because he is not a flight risk or danger to the community. (Dkt. 15 at 12-13; Dkt. 16 at 9-10.) Petitioner is mistaken. Section 1231(a)(6) authorizes detention beyond the removal period for noncitizens who are removable under § 1227(a)(1)(C), which applies to Petitioner. Thus, ICE was not required to find that he presents a danger to the community or a flight risk in order to arrest him. The Court concludes that Petitioner's arrest and detention complied with the applicable statutory and regulatory requirements.[10]

Petitioner additionally seeks release so that he can attend the wrongful termination arbitration in person. The Court previously denied this request, finding that Petitioner failed to offer any lawful basis for this relief. (Dkt. 12 at 2.) Petitioner's additional briefing offers no reason to revisit this determination.

In his recently-filed notice regarding his June 23, 2020 bond hearing, Petitioner argues that the IJ's decision is legally and constitutionally defective. (Dkt. 17 at 2.) This issue is not included in his habeas petition and Petitioner has not asked for leave to amend his petition to challenge the IJ's bond determination. In addition, the Ninth Circuit has held that the proper procedure to challenge an IJ's bond determination is to appeal to the BIA, wait for the BIA to render its decision, and then file a habeas petition in the district court. *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011). Although the exhaustion requirement is prudential and may be waived, *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), Petitioner's notice to the Court does not establish that waiver is appropriate here. Accordingly, the Court declines to address Petitioner's challenge to the IJ's denial of bond.

---

[10] Petitioner also fails to show that his arrest and detention are arbitrary and capricious as required for an APA violation or that due process requires additional or alternative process.

REPORT AND RECOMMENDATION - 33

IV.    <u>CONCLUSION</u>

The Court recommends that the Government's motion to dismiss for lack of jurisdiction (Dkt. 6) be GRANTED in part and DENIED in part, as explained above, and that Petitioner's motion for a stay of removal and release from custody (Dkt. 8) be GRANTED as to the stay of removal and DENIED as to the request for release. The Court further recommends that this matter be RE-REFERRED to the undersigned for further proceedings on the merits of Petitioner's claims related to his provisional waiver application. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>August 7, 2020</u>**.

Dated this <u>17th</u> day of July, 2020.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 34